UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

CORBIN DALE,                        )
                                    )
        Plaintiff,                  )        Civil Action No. 5: 20-324-DCR
                                    )
V.                                  )
                                    )
CITY OF PARIS, et al.,              )        **MEMORANDUM OPINION**
                                    )            **AND ORDER**
        Defendants.                 )

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Few people would probably blame Corbin Dale for wearing short sleeves in the July heat.  But as a lineman for the City of Paris, his attire was dictated by safety rather than comfort. Thus, when Dale failed to wear protective sleeves in violation of City policy, he was suspended for one day without pay.  Dale felt that he was being singled out and punished for conduct his supervisor condoned in other, non-minority employees.  As a result, he brought this suit to recover damages for the allegedly disparate treatment and the process that led to his suspension.  Defendants City of Paris (Dale's employer), Aaron Sparkman (Dale's direct supervisor), and Daron Jordan (the City Manager and Sparkman's direct supervisor) have moved for partial judgment on the pleadings.

## I.  RELEVANT FACTS

Plaintiff Corbin Dale is an African American resident of Bourbon County, Kentucky, and a fourteen-year employee of the City of Paris Electric Department ("the Department"). [Record No. 1, ¶ 13] In his capacity as a lineman, he is tasked with "maintain[ing] and repair[ing] the electrical distribution system for the City of Paris."  [*Id.* at ¶ 25]  Prior to 2017

(when the City hired Sparkman as his supervisor), Dale was seemingly satisfied with his employment. [*Id.* at ¶ 4] He alleges that Sparkman's hire signaled the beginning of a pattern of unfair treatment toward minorities within the Department. [*Id.* at ¶ 28]

Dale's Complaint details a number of racial slurs allegedly made by employees in the Department toward "members of the public." [Record No. 1, ¶ 30] And Dale contends that Sparkman "was aware of the actions and failed to properly train, supervise, and discipline the crew members responsible for the acts." [*Id.* at ¶ 32] The Complaint connects this context of "egregious racial discrimination" and alleged harassment to new safety guidelines ("the new policy") that "allow[ed] for employees of [the Department] to be suspended without pay for only one offense and did not require a hearing." [*Id.* at ¶¶ 5, 35] The new policy detailed the personal protective equipment required for Department employees in a number of situations and stated the "[c]onsequences" for violations of the policy. [Record No. 15-1] In relevant part, a consequence for an employee's "[f]irst offense" under the policy is listed as "[one] day off without pay." [*Id.*]

Dale contends that this policy violated the employee handbook he signed when he was hired by the Department in 2006 ("the handbook"). For one thing, he alleges that the handbook requires new policies to be approved by the City Commission, but the new policy was enacted unilaterally.[1] [Record No. 1, ¶¶ 23-24, 33-34] Dale further maintains that the new policy is contrary to "eligibility requirements for discipline . . . and suspension without pay" in the original handbook. [*Id.* at ¶ 22] Specifically, the handbook states that "[s]uspension without

---

[1]    While Dale's response to the current motion includes what appears to be the new policy, neither party has provided the Court with the employee handbook. [*See* Record No. 15-1.] Thus, as it must at this stage, the Court accepts as true Dale's contentions about the handbook's contents.

pay must be approved by the City Commission." [*Id.* at ¶ 24]  Dale signed the new policy on September 24, 2018, but he alleges that he was unaware that it was not approved by the City Commission.  [*Id.* at ¶ 37]

On August 8, 2019, Sparkman notified Dale that he would be suspended for one day without pay for "failing to wear long sleeves while working on an energized conductor on two separate occasions." [Record Nos. 1, ¶ 40; 10-2, p. 3]  The violations allegedly occurred on July 15, 2019, and July 17, 2019. [*Id.*]  Dale's Complaint alleges that Jordan was aware of and approved the suspension without bringing it before the City Commission.  [Record No. 1, ¶ 44]  At the time, Dale denied the alleged violations occurred, questioned why he was not provided notice "in a timely manner," and requested a hearing before the City Commission. [*Id.* at ¶¶ 41, 48]  He asserts that his concerns were never addressed.  On December 19, 2019, Dale filed a formal grievance with Jordan that was denied by the City a month later.  [*Id.* at ¶¶ 50-53]  The denial allegedly contained a statement by Jordan that Dale had refused to meet with him to discuss the violations on two occasions, but Dale denies that claim.  [*Id.* at ¶¶ 54-55]

On March 19, 2020, Dale requested a right to sue letter from the United States Equal Employment Opportunity Commission.  [Record No. 1, ¶ 61]  While that request was pending, the City reprimanded (but did not suspend) Dale for failing to supervise a junior employee. [*Id.* at ¶ 56]  Dale asserts that this unrelated disciplinary action was in retaliation to the grievance filed in December 2019 because he has no supervisory responsibilities.  [*Id.* at ¶¶ 57-58]

Dale argues that the defendants were "aware of other Caucasian [employees] of [the Department] committing egregious act [sic] in violation of the new policy and [did] not

discipline[] those employees." [Record No. 1, ¶¶ 45-46]  He alleges that Sparkman himself has violated the new policy, and that Jordan did not act when he was made aware of Sparkman's violations.  [*Id.* at ¶ 47]

Dale filed this suit alleging violations of both federal and state law.  The Complaint seeks relief for: (1) racial discrimination and maintaining a hostile work environment in violation of 42 U.S.C. § 1981; (2) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (3) violations of Dale's procedural due process rights under the Fourth[2] and Fourteenth Amendments of the Constitution, pursuant to 42 U.S.C. § 1983; (4) racial discrimination and unlawful retaliation in violation of Kentucky Revised Statutes ("KRS") § 344.050; and (5) tort claims for negligent hiring and supervision and negligent infliction of emotional distress.

## II.  STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings.  The standard of review applied by the Court in addressing motions under this rule is "the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Thus, the Court takes "all well-pleaded material allegations . . . of the opposing party" as true, and the motion is granted only if "the moving party is nevertheless clearly entitled to judgment."  *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480

---

[2]     As the defendants correctly point out, the Fourth Amendment "is not triggered" by the conduct described in the Complaint.  [Record No. 10-2, p. 10]  Dale's response indicates that his claim under the Fourth Amendment was included "due to a clerical error," and he "seeks leave to amend the complaint to properly cite the Fifth Amendment instead of the Fourth Amendment."  [Record No. 15, p. 6]  This request will be addressed below.

(6th Cir. 1973).  Stated differently, relief is warranted if "the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [him to] relief."  *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).  Having set out the facts in the light most favorable to Dale, the Court will consider whether he could be entitled to relief as a matter of law.

## III.  LEGAL ANALYSIS

First, the defendants argue that all claims against Sparkman and Jordan ("the individual defendants") in their official capacities should be dismissed as duplicative.  [Record No. 10-2, pp. 6-7]  Next, they contend that the claims against Sparkman and Jordan in their individual capacities under 42 U.S.C. §§ 1981 and 2000e and KRS § 344.050 should be dismissed because those statutes do not provide for liability against these defendants.  [*Id.* at pp. 7-8]  Similarly, they suggest that the negligent hiring and supervision claims against the individual defendants should be dismissed because they lack the "authority to hire and fire the alleged 'direct' tortfeasor."  [*Id.* at p. 9]  Finally, all defendants seek judgment as a matter of law on Dale's due process claims.  [*Id.* at pp. 10-14]

### A.   DEFENDANTS SPARKMAN AND JORDAN ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW TO THE EXTENT DALE ASSERTS CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES.

The defendants' motion seeks to clarify that Dale may not assert separate claims against the City, on the one hand, and Sparkman and Jordan in their official capacities, on the other.  Where a plaintiff names a government official in a suit for retroactive relief, any recovery from the defendant in his or her official capacity would stem from the government, not the individual.  Thus, "official-capacity claims are deemed to be against the [government]." *Clark v. Kentucky*, 229 F. Supp. 2d 718, 721–22 (E.D. Ky. 2002) (citing *Doe v. Wigginton*, 21 F.3d

733, 736–37 (6th Cir.1994)).  For that reason, any claims Dale asserts against the individual defendants in their official capacities are unnecessary because, as the defendants point out, "it is like suing the [City] twice."  [Record No. 10-2, p. 5]

Dale's response is unclear, but he argues that the defendants' request to dismiss the official-capacity claims is "premature."  [Record No. 15, p. 3]  He mentions the Court's obligation to construe the facts in his favor and suggests that insufficient facts exist at this stage to determine whether the defendants' arguments merit relief.  [*Id.* at pp. 3-4]  The defendants' reply clarifies that they "are not challenging the appropriateness of the claim nor any of the underlying factual assertions," but "merely point[ing] out" that the claims are redundant.  [Record No. 16, pp. 1-2]

The defendants are correct that additional facts are not needed to dismiss the claims against Sparkman and Jordan in their official capacities.  By naming the individual defendants in their official capacities and separately naming the City of Paris, Dale has effectively named the same party three times.  Therefore, the claims against the individual defendants in their official capacities will be dismissed.

**B.    DEFENDANTS SPARKMAN AND JORDAN ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON DALE'S RACIAL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS UNDER 42 U.S.C. § 1981.**

A state actor sued in his or her individual capacity is not liable for violations of 42 U.S.C. § 1981.  *McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012).  That section provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws" regardless of their race.  42 U.S.C. § 1981(a).  The Supreme Court has held that

Section 1981 reaches private acts of discrimination, and it has implied a damages remedy to effectuate the section. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). However, it has clarified that, where an action is brought "against state actors alleging violation of the rights declared in § 1981," the exclusive remedy is found in 42 U.S.C. § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989); *accord Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) ("An official capacity lawsuit against . . . a state actor[] for constitutional violations, such as race discrimination, cannot be brought under § 1981."). And in *McCormick*, the United States Court of Appeals for the Sixth Circuit held that "*Jett* bars a § 1981 claim against an individual state actor sued in his or her individual capacity." 693 F.3d at 660.

The defendants argue that "[t]he logic of *McCormick* is directly applicable here" and the Section 1981 claims against Sparkman and Jordan in their individual capacities must be dismissed. [Record No. 10-2, pp. 6-7 (citing 693 F.3d at 660)] Again, Dale's response is confusing. He cites pre-*McCormick* cases discussing individual liability for private actions under Section 1981 despite the fact that the Complaint seeks relief for individual actions taken under color of state law. [*See* Record No. 15, pp. 4-5.] The conduct of which he complains—the defendants' "intentional interference with an employment contract . . . by singling him out and improperly disciplining him based on his race"—could only have been undertaken by the individual defendants as state actors. [*Id.* at p. 4] No favorable construction of the Complaint supports a claim for private discrimination. As such, the individual defendants are entitled to judgment as a matter of law on Dale's Section 1981 claims.

C.   **SPARKMAN AND JORDAN ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON DALE'S CLAIMS UNDER 42 U.S.C. § 2000E-2 AND KRS § 344.**

Both federal and Kentucky law prohibit discrimination by an "employer" or its agent based on race. 42 U.S.C. §§ 2000e(b), 2000e-2; KRS §§ 344.030, 344.045. Federal law defines an "employer" as "a person . . . who has fifteen or more employees for each working day . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Kentucky's definition is more inclusive and defines an employer as "a person who has eight (8) or more employees . . . and an agent of such a person." KRS § 344.030. Nevertheless, the Kentucky statute was "modeled after" its federal counterpart. *Palmer v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 882 S.W.2d 117, 119 (Ky. 1994); *see also Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 403 n.5 (6th Cir. 1997) (noting that "it is common practice to look to the federal counterpart in construing KRS Chapter 344").

Although the statutes contemplate discrimination by an employer's "agent," courts have held that the "purpose of th[e] agent provision was to incorporate *respondeat superior* liability into the statute." *Wathen*,115 F.3d at 405–06 (quoting *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)). This interpretation avoids a situation in which small employers are shielded from liability, but individuals are not. *Id.* at 406 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995)). Thus, while an agent may commit the discriminatory act that violates 42 U.S.C. § 2000e-2, only the employer may be held liable.[3]

Dale asserts liability against the individual defendants under both statutes. But again, his arguments run directly into binding precedent. In *Wathen*, the Sixth Circuit "h[e]ld that an

---

[3]   The defendants do not specifically argue that Kentucky 's definition of "agent" should be interpreted similarly to its federal counterpart, but courts in this District have recognized as much. *See Ivey v. McCreary Cty. Fiscal Court*, 939 F. Supp. 2d 762, 770 (E.D. Ky. 2013). And Dale has not suggested that the term, as used in the Kentucky statute, is an exception to the well-recognized similarities.

individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under [§ 2000e]." 115 F.3d at 405. And because KRS § 344 "mirrors" 42 U.S.C. § 2000e, the court's holding was "equally applicable" to state-based claims. *Id.* Neither Sparkman nor Jordan qualify as employers under the statutes. Therefore, these individual defendants may not be held liable under either statute as a matter of law.

Dale makes a number of arguments which were considered and rejected by the Sixth Circuit in *Wathen*. He suggests that the Court "begin with the plain language of the statute" and find the ordinary meaning of agent "dispositive." [Record No. 15, p. 5] This suggestion comes despite the Sixth Circuit's rejection of "the narrow and literal reading of the statute." *Wathen*, 115 F.3d at 405. He suggests that the "intent" of the law "was to include individuals." [Record No. 15, p. 5] And never mind that the Sixth Circuit held that doing so would be "clearly at odds with the express intent of Congress." *Wathen*, 115 F.3d at 405. The Court could go on, but it is enough to note that there is no set of facts under which Dale could recover from Sparkman and Jordan because, as a matter of law, they are not employers.

### D.   SPARKMAN AND JORDAN ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON DALE'S TORT CLAIMS.

The individual defendants also argue that they may not be held liable for the torts alleged in Dale's Complaint. The Complaint contains averments that the defendants knew or should have known of "its agents and/or employees' propensity for unlawful racially harassing and age harassing behavior." [Record No. 1, p. 14] Further, the defendants' failure to supervise and continuing retention of these employees allegedly caused Dale harm. [*Id.* at p. 15]

To state a claim for negligent supervision or retention under Kentucky law, "'the plaintiff must allege that the defendant knew or had reason to know of the employee's harmful propensities; that the employee injured the plaintiff; and that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries.'"  *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (quoting 27 Am. Jur. 2d, *Employment Relationship*, § 401 (2004)).  The upshot is that an employer is liable for the torts of an employee when "he or she knew or had reason to know of the risk that the employment created."  *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003).

The individual defendants focus on a different predicate for a claim of negligent retention, hiring, or supervision:  they argue that neither of them had the ability to retain, hire, or supervise the employees in question.  [Record No. 10-2, p. 9]  The defendants rely on KRS § 83A.150, which states that "[n]o officer or employee of the city shall be appointed or removed except through action by the [Commission]."  [*Id.*]  Dale contends in his response that it "defies logic for the [d]efendants to argue that they do not have the power to take employment actions against [Dale] when that is exactly what they did [here]."  [Record No. 15, p. 6]  The defendants answer by asserting that "disciplinary authority alone does not provide a basis for negligent hiring and retention, since one cannot be negligent in discharging a duty that he does not possess the authority to exercise."  [Record No. 16, p. 6]

The defendants have not shown that Dale could not recover under any set of facts.  First, the Court has little information at this early stage regarding the City's organization and employment hierarchy.  And from Dale's allegations, it is clear that Jordan and Sparkman had the capacity to discipline employees under their supervision, including the ability to transfer or terminate an individual.  [Record No. 15-1, p. 2]  Although Kentucky law seemingly allows

only the Commission to terminate an employee, the defendants have not cited any cases holding that the statute shields lower-level (but still supervisory) employees from tort liability. Further, the defendants concede that Jordan may "recommend" to the Commission that an employee be terminated.  [Record 10-2, p. 10]  Thus, the individual defendants are not entitled to judgment as a matter of law on Dale's tort claims.

### E.    DALE'S DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW.

The Complaint also alleges violations of Dale's procedural and substantive due process rights.  He contends that his "reputation, good name, honor, and integrity are among the liberty interests" impacted by the defendants' actions.  [Record No. 1, ¶ 1]  Further, he contends that the defendants "deliberately interfere[ed]" with his "right to a hearing" and "ultimately den[ied] [his] request without reasonable explanation."  [*Id.* at ¶ 77]

As noted, Dale originally relied on the Fourth and Fourteenth Amendments, but his response to the defendants' motion requests leave to amend the Complaint to substitute Fifth Amendment claims in place of the Fourth Amendment.  [Record No. 15, p. 6]

> Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires.  However, leave to amend a complaint may be denied where there is . . . futility of amendment . . . . A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.

*Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (internal citations and quotations omitted).  Thus, the Court will consider whether Dale's claims would survive the defendants' motion if the amendment had already been permitted.  If it would not survive the defendants' motion, amendment would be futile.

- 11 -

Dale's response to the defendants' motions also indicates that he "does not argue that there was a liberty interest and seeks leave to amend his Complaint to remove any claim related to a liberty interest." [Record No. 15, p. 7]  Thus, the Court need not address Dale's substantive due process claim.

Concerning Dale's procedural due process claim, the defendants argue that Dale has failed to plead a constitutionally-protected property interest.  [Record No. 10-2, pp. 10-12]  They contend that Dale had no expectation of continued employment that could serve as a property interest.  [*Id.*]  Further, they assert that, even if Dale had a property interest in continued employment, a one-day suspension without pay is a *de minimis* deprivation of such an interest.  [*Id.* at p. 14]  Dale responds that the City's "custom and practice . . . form[ed] the basis for a protected property interest." [Record No. 15, p. 7]  The alleged custom and practice was the handbook's requirement that an employee receive a hearing before being suspended without pay.  [*Id.*]  However, he does not address the defendants' argument that the deprivation was insubstantial.

The Constitution protects against deprivations of property interests that are created by "statute, policy, practice, regulation or guideline."  *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir. 1991) (citing *Bishop v. Wood*, 426 U.S. 341, 347 (1976)).  "If such interest is recognized by state law, then the employee possesses a property interest of which the state employer cannot deprive him without providing due process."  *Id.*  However, Dale must allege a deprivation of constitutionally recognizable magnitude.  "[D]ue process protections attach to deprivations of significant property interests."  *Seger v. City of Lancaster, Ky.*, 930 F. Supp. 2d 821, 832 (E.D. Ky. 2013).  The Sixth Circuit has reasoned that a two-day "suspension . . . in the manner of routine discipline . . . [i]s *de minimus* [sic] and not deserving of due process

- 12 -

consideration." *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 272 n.1 (6th Cir. 1985); *but see Boals v. Gray*, 775 F.2d 686, 689 n.5 (6th Cir. 1985) (a suspension for "five, not two days" was constitutionally recognizable). In *Gillard v. Norris*, the court clarified that "routine disciplinary suspension[s]," as opposed to situations in which an employer deviates from the routine practice, are *de minimis* deprivations. 857 F.2d 1095, 1098 (6th Cir. 1988) (citing *Boals*, 775 F.2d at 689 n.5).

Thus, even if Dale had a protected property interest that was implicated by his suspension, any deprivation was *de minimis*. Dale was suspended for one day without pay and he returned to the same position he occupied prior to the suspension. He was eligible for a suspension under a policy that he acknowledged. He does not allege that the defendants implemented a punishment in excess of the policy or outside the norm.[4] Even if Dale could prove that the process provided was less than what was constitutionally due, he could not recover from the defendants as a matter of law. *See Carter*, 767 F.2d at 272 n.1.

Dale cites *Christian v. Belcher* for the proposition that an employer's "policies and practices" can give rise to a "legitimate claim of entitlement to continued employment." 888 F.2d 410, 416–17 (6th Cir. 1989) (citing *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972)). But Dale was not discharged—he was disciplined in a rather insubstantial way. And while he correctly cites a theory that may support a property interest in a particular case, he overlooks the fact that the property interest must be deprived in an unconstitutional manner. Therefore,

---

[4]    The Complaint contains an allegation that the defendants routinely overlooked violations of the policy. While this could support Dale's allegations that the defendants had a policy or practice of not enforcing the policy (an argument he does not make), it does not alter the conclusion that the punishment was *de minimis*.

the defendants are entitled to judgment as a matter of law on Dale's due process claims.  For this reason, any amendment to the Complaint would be futile.

## IV.  CONCLUSION

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.      Defendants Sparkman and Jordan's motion for judgment on the pleadings on the plaintiff's claims against them in their official capacities [Record No. 10] is **GRANTED**.

2.      Defendants Sparkman and Jordan's motion for judgment on the pleadings on the plaintiff's claims pursuant to 42 U.S.C. § 1981 [Record No. 10] is **GRANTED**.

3.      Defendants Sparkman and Jordan's motion for judgment on the pleadings on the plaintiff's claims pursuant to 42 U.S.C. § 2000e-2 and KRS § 344 [Record No. 10] is **GRANTED**.

4.      Defendants Sparkman and Jordan's motion for judgment on the pleadings on the plaintiff's tort claims [Record No. 10] is **DENIED**.

5.      The defendants' motion for judgment on the pleadings on the plaintiff's due process claims [Record No. 10] is **GRANTED**.

6.      The plaintiff's substantive due process claims against the defendants are **DISMISSED**.

7.      The plaintiff's request to amend the Complaint [Record No. 15] is **DENIED**.

8.      Dale's claims against the City of Paris pursuant to 42 U.S.C. §§ 1981 and 2000e and KRS § 344.050 remain pending.  Dale's tort claims remain pending against the City of Paris and Defendants Sparkman and Jordan in their individual capacities.

Dated:  December 22, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky