UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CORBIN DALE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-324-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF PARIS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Corbin Dale's motion for leave to file a proposed First Amended Complaint is pending for consideration. [Record No. 24] Dale seeks to add additional allegations in further support of his original causes of action. Specifically, Dale (who is African American) alleges that he was recently passed over for a promotion by a lesser qualified white employee. [Record No. 24-1, ¶ 82] He attempts to use this alleged new instance of disparate treatment to buttress his due process, racial discrimination, and retaliation claims. He also wishes to name two additional defendants. The defendants oppose the motion. [Record No. 26] Because good cause fails to justify adding additional parties at this stage in the proceeding, that request will be denied. However, because the amendments do not appear to be entirely futile, Dale's request to amend his Complaint will be partially granted.

I.   FACTUAL BACKGROUND

The Court summarized the facts giving rise to this matter and Dale's claims in a prior Memorandum Opinion and Order. [*See* Record No. 20, pp. 1-4.] Dale continues to press the same causes of action here. However, the current motion seeks to include subsequent facts

that were not in the record previously. Now, Dale asserts that the City of Paris Electrical Department ("the Department") "has a custom and practice of promoting its most senior lineman to crew chief and then to foreman" without a formal application process. [Record No. 24-1, ¶ 1] Notwithstanding this alleged custom and practice, Dale states that he was "passed over for promotions" on two occasions. [*Id.* at ¶ 6]

As outlined in the Proposed Amended Complaint ("PAC"), Dale was first denied a promotion in 2018. [Record No. 24-1, ¶ 13] When the crew chief position became available, Dale, who "was the most senior lineman at the time," did not receive the allegedly customary promotion. [*Id.* at ¶ 14] In December 2020, the foreman position became available. [*Id.* at ¶ 15] Again, despite his seniority, Dale was not promoted as a matter of course. [*Id.* at ¶ 16] Instead, the position was "formally posted," and Dale was required "to apply, complete an examination, and a formal interview" in January 2021. [*Id.* at ¶ 17] Ultimately, "a white male lineman with ten years less experience" was chosen for the foreman job on March 4, 2021. [*Id.* at ¶ 18]

In addition to these new assertions, the PAC identifies two new Defendants: Mike Withrow and Erin Morton. [Record No. 24-1, ¶¶ 26-27] Withrow is identified as the Assistant City Manager for the City of Paris ("the City") and he allegedly participated in the selection process for the foreman position. [*Id.* at ¶¶ 26, 47, 80] Morton is identified as the City's Human Resources Director. She, too, allegedly participated in the foreman-selection process. [*Id.* at ¶¶ 27, 47, 80] Both Morton and Withrow were allegedly aware of (and condoned) the Department's policy of suspending employees without pay for violations of its "Guidelines for Safe Work Practices." [*Id.* at ¶ 54; *see* Record No. 15-1.] This is the policy that formed the basis of Dale's original Complaint.

As previously mentioned, the PAC would add the failure-to-promote theory to Dale's due process, racial discrimination, and racial harassment claims. Withrow and Morton would be added as defendants to the due process, negligent hiring, retention, and supervision, and negligent infliction of emotional distress claims.

## II. LEGAL STANDARDS

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend a pleading with leave of court and it instructs that leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has provided the following general instructions regarding amendments:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, a party opposing an amendment may overcome the presumption in favor of granting leave by showing that one of the above factors counsels against an amendment.

Rule 15 also contemplates a circumstance in which a party seeks leave to file a *supplemental* pleading. Fed. R. Civ. P. 15(d). When a party moves to file a supplemental pleading, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Thus, amended and supplemental pleadings are different in that "[t]he former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the

pleading to be altered and represent additions to or continuations of the earlier pleadings." 6A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1504 (3d ed. 2002); *see Princesse D'Isenbourg Et Cie Ltd. v. Kinder Caviar, Inc.*, 2012 WL 258567, at *1 (E.D. Ky. Jan. 27, 2012) (same). But this difference is largely semantic. In determining whether a supplemental pleading should be permitted, the Court applies "same factors that apply to motions filed pursuant to Rule 15(a)." *Princesse D'Isenbourg Et Cie Ltd.*, 2012 WL 258567, at *1; *see Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) (same).

One additional Rule of Civil Procedure is relevant here because Dale sought leave to amend after the deadline set out in the Court's Scheduling Order. [Record No. 7, ¶ 10 (setting a December 31, 2020, deadline for the plaintiff to move to amend)] Rule 16 requires a court to enter a scheduling order, and it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). "When leave to file an amendment is filed after the deadline in the Scheduling Order, [Rule] 16 provides an additional—and more stringent—threshold requirement." *Walker v. Bagshaw Trucking, Inc.*, 2015 WL 12977345, at *1 (E.D. Ky. Oct. 1, 2015). A demonstration of good cause "is required *before* a court may consider if the amendment would be proper." *Birchwood Conservancy v. Webb*, 302 F.R.D. 422, 424 (E.D. Ky. 2014) (emphasis added). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). The Court also considers "possible prejudice" to the opposing party. *Id.*

### III. LEGAL ANALYSIS

**A.  Extending the Deadline for Amending the Pleadings**

Dale does not acknowledge that his motion, "in effect, mov[es] the Court to extend the deadline for submitting amendments." *Scheel v. Harris*, 2012 WL 5497967, at *1 (E.D. Ky. Nov. 13, 2012).  Instead, he argues only that the amendment would be proper. [Record No. 24, pp. 3-4]  The defendants note that Dale's motion was filed "over four months" after the Court's deadline.  [Record No. 26, p. 3]  They further argue that the proposed amendments would be unduly prejudicial because the amendments would expand the scope of discovery and likely lead to additional requests to amend the Scheduling Order. [*Id.*]  Dale did not reply to the defendants' arguments, and the time for doing so has passed.

It is unclear whether good cause justifies extending the deadline to allow Dale to add additional parties.  The Scheduling Order was entered October 14, 2020, and the parties presumably began discovery soon thereafter.  Then, just as now, Dale's claims concerned his employment with the Department and alleged racial discrimination that was condoned by the City.  There is no explanation for Dale's lack of diligence in naming Withrow and Morton as defendants.  Dale identifies Withrow and Morton as having "managerial authority" over him, which they presumably exercised during the course of his employment.  [Record No. 24-1, ¶¶ 26, 27]  The only allegation in the PAC that could be interpreted as an explanation for the late additions—that Withrow and Morton were "on the interview panel" for foreman candidates— does not explain why these parties could not have been identified earlier.  [*Id.* at ¶ 80]  In fact, Dale ties the additional parties to multiple allegations from 2018.  [*Id.* at ¶¶ 50, 54]  And the claims he asserts against Withrow and Morton are not limited to the recent promotion.  Thus, Dale's untimely attempt to add additional parties will be denied.

Nevertheless, good cause justifies extending the deadline regarding the allegations related to the promotion are concerned. Under Dale's version of events (which the defendants do not contest), he diligently moved the Court to add the allegations after the vacancy was officially filled. [Record No. 24, p. 2] The vacancy itself was not posted until after the amendment deadline, and Dale filed the PAC 32 days after the vacancy was filled. [*Id.*] Thus, while it is true that he seeks leave to amend well past the deadline, it is unclear how he could have sought to make these allegations any sooner.

B.  **Leave to Amend**

But even if good cause justifies extending the deadline, the Court must consider whether leave to amend should be granted. Dale argues that the motion is made in good faith, will not cause undue delay, will not prejudice the defendants, and "is everything but futile." [Record No. 24, pp. 3-4] The defendants disagree, at least as far as the due process claims are concerned. Their response initially contends that the PAC continues to assert previously dismissed causes of action. [Record No. 26, p. 4] But the bulk of their argument concerns the alleged futility of amending the due process claims. [*Id.* at pp. 4-7] In fact, the defendants do not appear to contest Dale's motion insofar as it would add the failure-to-promote theory to his racial discrimination claims.[1]

The defendant's futility argument relies heavily on the Court's prior ruling. Dale originally asserted due process claims against all defendants for "Violation of the Fourth and

---

[1] For example, the defendants concede that Dale's claims are "more appropriately raised" under the statutory provisions contained in Counts I, II, IV, and V of the PAC. [Record No. 26, p. 7] Thus, the Court construes their futility argument as limited to the Due Process claims in Count III. [*See id.* ("Dale's Motion should be denied as futile *insofar as the First Amended Complaint seeks to revive Count III.*") (emphasis added).]

Fourteenth Amendments to the United States Constitution." [Record No. 1, Count III] Specifically, he contended that, as a result of a one-day suspension, the defendants interfered with his procedural and substantive due process rights by depriving him of his property interest in continued employment. [*Id.* at ¶ 77; Record No. 15, p. 7] After the defendants moved for judgment on the pleadings, Dale walked back these claims. He wholly abandoned the substantive due process claim. [Record No. 15, p. 7] Dale also stated that the Fourth Amendment was "only cited due to a clerical error" and sought leave to substitute a Fifth Amendment claim in its place. [*Id.* at p. 6] But he pressed the procedural due process claim: he clarified that the City "blatantly ignored the customs and practices that were set out in the Employee Handbook [and that] required a hearing before suspension without pay." [*Id.* at p. 7]

The Court granted the defendants' motion for judgment on the pleadings on what was left of Dale's due process claim. Even assuming Dale had alleged that a property interest was implicated by his suspension, the Court concluded that "any deprivation was *de minimis*." [Record No. 20, p. 13] And allowing Dale to amend the Complaint to substitute a Fifth Amendment claim would have been futile. [*Id.*] Thus, the question is now whether this holds true for the due process allegations in the PAC.

The Complaint and the PAC are very similar. The PAC contains an almost word-for-word recitation of the prior due process claims. Just like the original Complaint, it cites the "Fourth Amendment and Fourteenth Amendments to the United States Constitution" as a basis for relief against "ALL DEFENDANTS." [Record No. 24-1, Count III] And it again alleges "interference with [Dale's] right to substantive due process." [*Id.* at ¶ 99]

The Court identified three differences: first, Dale replaced the catch-all party "DEFENDANTS" with "CITY"; second, he amended a parenthetical description of the cause of action to state, "Violation of Due Process Interference with Property Interest" [2]; and third, the allegedly unconstitutional conduct now concerns the City's interference with his "right to a promotion and . . . increase in earnings." [*Id.* at ¶ 101]

The defendants contend that these changes do not save the due process claims from their prior fate. The Court largely agrees. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quotation omitted). Any claim Dale asserts under the Fourth Amendment would not survive a motion to dismiss for the same reasons he recognized previously. [*See* Record No. 15, p. 16.] And even if Dale could prove that he had some right to a promotion under the City's policies and customs, the Sixth Circuit has held that there is no substantive due process right to a promotion. *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) (holding that "no such right exists" even where a promotion was guaranteed by a fire department captains' contract with a city).

The PAC's procedural due process claims are partially futile. The claims arise under 42 U.S.C. § 1983, which generally provides a cause of action against a "person who, under color of any . . . custom . . . of any State" deprives another of their constitutional rights. The Sixth Circuit has held "that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in [K.R.S. §] 413.140(1)(a)." *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Thus, to the extent Dale's claims concern his alleged entitlement

---

[2] The original Complaint contained the following description: "Violation of Due Process Interference with *Liberty Interest*." [Record No. 1, p. 11 (emphasis added)]

to the 2018 promotion, these allegations are time-barred. *See Wireman v. Fletcher*, 2006 WL 3780548, at *8 (E.D. Ky. Dec. 20, 2006), *aff'd*, 250 F. App'x 661 (6th Cir. 2007).

But the allegations related to the most recent promotion could give rise to a procedural due process claim. The Fourteenth Amendment protects against deprivations of property without due process of law. U.S. Const. amend. XIV. To have a property interest in a promotion, a person must have "more than an abstract need or desire for it"—he must show "a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "This entitlement can come from either positive law, such as a city ordinance, or more informal 'rules and understandings' that are 'promulgated and fostered by state officials.'" *Estep v. City of Somerset, Ky.*, 2010 WL 5391909, at *6 (E.D. Ky. Dec. 21, 2010) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972)).

Here, Dale has alleged that the Department "fostered an understanding" that the most senior lineman would receive a promotion as a matter of course, and this supports an inference that he had a property interest in the promotion. *Id.* The defendants have failed to contest whether such a custom or practice existed. They have not pointed to any statute, ordinance, or rule that would rebuff Dale's claims, and the Employee Handbook at the center of Dale's original Complaint is still not in the record. Thus, at this time, it appears that Dale has plausibly alleged an entitlement to a promotion.

Nevertheless, the defendants argue that Dale's due process claims are futile because he does not contest the process actually provided by the City. [Record No. 26, p. 7] They note that "the position was formally posted in January 2021 and [Dale], like all other applicants, was required to 'apply, complete and examination, and a formal interview.'" [*Id.* (quoting Record No. 24-1, ¶ 17)] But this alone does not indicate that the process provided was

sufficient. The Supreme Court has instructed courts to balance a number of factors to determine what due process requires. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Without detailing those factors here, it is enough to note that the Court has very little information on which to rely in weighing the interests involved. In this context, where the defendants have not moved to dismiss the procedural due process claim but instead tersely opposed its introduction, the Court is unable to properly evaluate its merits.

Moreover, the remainder of the *Foman v. Davis* factors support allowing Dale to include the allegations related to the promotion. 371 U.S. at 182. The new allegations are related to Dale's original Complaint, and he does not seek leave to add any new claims for relief. The allegations are merely additional instances of the conduct he originally alleged, as the defendants acknowledge. [*See* Record No. 25, p. 7.] Moreover, the evidence underlying the claims is likely to overlap, and there is no indication that the scope of discovery would be significantly expanded by the amendments. The defendants note that some depositions have been delayed during the pendency of this motion, but the Court's denial of the current motion would not appear to remedy that concern. [Record No. 26, p. 3] Nor does this delay alone justify requiring Dale to initiate a separate proceeding to raise the failure-to-promote theory, which would not serve the Court's interest in resolving the parties' claims in one proceeding.

### IV. CONCLUSION

Dale will be permitted to amend the Complaint to add the proposed allegations concerning the recent foreman position to his procedural due process and racial discrimination claims. However, any allegations related to the crew-chief promotion are time-barred, and he will not be permitted to rely upon or add them. Additionally, good cause does not justify extending the deadline in the Scheduling Order to permit Dale to add additional parties.

Accordingly, for the reasons outlined above, it is hereby

**ORDERED** as follows:

1. The plaintiff's construed motion to extend the deadline contained in Paragraph 10 of the Scheduling Order [Record No. 7] is **GRANTED**.

2. The plaintiff's motion for leave to amend the Complaint [Record No. 24] is **GRANTED**, in part, and **DENIED**, in part, consistent with the instructions in this Memorandum Order and Opinion. The plaintiff shall have **ten (10) days** to file an Amended Complaint consistent with the rulings outlined above.

Dated: June 1, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky